# COUNTY OF ADDISON,

##### AT THE

## JANUARY TERM, 1882.

##### PRESENT:

HON. HOMER E. ROYCE,
HON. TIMOTHY P. REDFIELD,  } ASSISTANT JUDGES.
HON. H. HENRY POWERS,
HON. RUSSELL S. TAFT,

---

## WILLIAM R. REMELE v. JAMES DONAHUE.

### *Dog. Damage. Sheep.*

1. The plaintiff's sheep were killed by two dogs, only one of which was owned by the defendant. Under the statute the defendant is liable for double the whole amount of the damage.
2. When the plaintiff discovered that his sheep had been injured by the dogs, he notified one of the selectmen, and the damages were appraised. *Held*, that the court properly submitted it to the jury to determine whether the plaintiff had signified his election to proceed against the town in such a manner that he could not afterwards proceed against the defendant.*

ACTION under the statute for damage done to the plaintiff's sheep by the defendant's dog. Jury trial, June, 1881, PIERPOINT, Ch.

---

* Section 4048, R. L., is as follows: "The owner of sheep, lambs, or other domestic animals worried, maimed or killed by dogs, may have his election whether to proceed under the provisions of the preceding section of this chapter, or under the provisions of section 3803 [s. 4051], but having signified his election by proceeding in either mode he shall not have the other remedy."

J., presiding. Verdict and judgment for the plaintiff. The plaintiff, after stating that he notified Mr. Hammond, the first selectman of Middlebury, of his injury, testified as follows:

Q. He went and examined the sheep, did he, and you were with him? A. Yes.

Q. And he appointed two appraisers, one of whom was Mr. U. D. Twitchell and the other Hubbard C. Potter, did he not? A. Yes, both of them were together and went and looked over the sheep.

Q. Did you show them the dead sheep yourself, or not? A. I did.

Q. For the purpose of having them appraised? A. Yes, I supposed it would be necessary for them to appraise if I took it into the County Court.

Q. You understood them to make an appraisal of the damage, didn't you? A. Yes.

Q. $200? A. Yes.

Q. I suppose you knew that they made a return of what they had done to the proper authorities here in the town of Middlebury, didn't you? A. I didn't.

Q. Have you since found it out? A. I found it out since I came into the court house here.

Q. And they made a return and that amount of damages was certified to the town treasurer of Middlebury, Mr. Phinney? A. I didn't know it till I came here.

Q. You have found out that fact? A. Yes, if it is a fact.

Q. You have found out that Mr. Hammond and the appraisers were paid out of the town treasury of Middlebury for the services they performed in the appraisal, haven't you? A. Yes.

Q. And you have found out, I suppose, that all that was necessary for you to do was to go and get your money from the town treasurer, if there was that amount of money there belonging to the dog fund for the payment of such damages? A. No, I didn't understand it so.

Q. You have found out that you could have drawn your money *pro rata*, if there wasn't enough to pay for all damages of this kind, from the town treasurer of Middlebury? A. No, I didn't understand it so.

Q. You notified Mr. Hammond as a selectman of Middlebury, didn't you? A. Not because he was the first selectman ; but because he knew my flock of sheep. I should have gone to him before any other man in the county ; not because he was the first selectman ; but because he was a good judge of sheep, and knew my flock of sheep perhaps better than any other man in the county.

Q. Because he understood the value of your flock of sheep? A. Yes, I suppose he did.

Q. And he was a good judge of their damage? A. Yes, and was a good judge of their damage.

Q. Didn't you go to him because he was the first selectman of Middlebury? A. No, I didn't go expressly because he was the first selectman of Middlebury, I should have gone to him to appraise this damage if he hadn't been the first selectman.

Mr. Hammond testified:

Q. I asked you whether he said he should elect the town, or shouldn't. A. Well, it is my impression that he said·if he couldn't fasten it on to Mr. Donahue's dog, that he shouldn't.

Q.  Is it anything more than an impression in regard to that?
A.  Yes, middling certain.

Q.  How?  A.  Pretty certain impression.

Q.  You told him that if the town paid for them, they would have to
be appraised, and the next morning you went up and did it?  A.  I took
that precaution to have it done.  I knew that in that season of the year
there couldn't be much told about the sheep in a very short time.  It
was very warm.  So I took a couple of men and went over with them.

·Q.  He didn't say he should elect the town?  A.  No, sir.

Q.  You are sure he didn't say that, are you?  A.  I guess he didn't
say it ; not if he could find out whose dog it was.  If he could find out
whose dog, he shouldn't.

PIERPOINT, Ch. J.  Q.  If I understand you, you didn't understand
him as electing to proceed against the town?  A.  No, sir, I didn't.

Q.  You understood that you were proceeding under this law, didn't
you?  A.  Yes.

Q.  That is what you understood you were doing?  A.  I was doing
that for the benefit of the town.

The Chief Justice charged the jury as follows, in part :

" It is then said by the defendant that the plaintiff in this case
cannot recover at all because he has elected to proceed against
the town ; and under the statute as it now stands it is provided
that where a party proceeds against the town he cannot proceed
against the individual, or where a party proceeds against the indi-
vidual he cannot proceed against the town.  And it is said in this
case that the party did proceed against the town so as to deprive
him of the right to proceed against the owner of the dog.  · Now, it is
unquestionably true that if Mr. Remele did proceed against the town
in this case, he cannot then proceed against the individual, but
he has to take his remedy from the source against which he first
proceeded.  That presents the question of fact to be determined
by you, whether Mr. Remele in this case did proceed against the
town so as to bring himself within the provisions of the statute in
that respect.  In order to do so, it is necessary that he should
understandingly and intentionally have adopted the remedy which
the law gives him against the town as that which he intended to
pursue.  And the question is, did he do so?  Did he elect to pro-
ceed against the town, and to determine that question you must
look of course at what he did, the circumstances under which he
did it, and the motive which he tells you he had in doing that
which he did.  Now, did he understandingly and intentionally·
elect to proceed against the town?  You have heard the testi-
mony of the plaintiff.  You have heard the testimony of Mr. ·
Hammond ; and upon the testimony of these two men substantially
this question is to be determined.  Mr. Remele says that when he
made the discovery of the injury which had been done to his sheep
on Sunday morning, he went at once—I think that morning, he

said—to Mr. Hammond. Mr. Hammond was the first selectman of the town. He went to him and notified him that he had sustained an injury by dogs to his sheep, and that he wanted him to go and look at the sheep and appraise the damage. I don't pretend to use his exact language. You will remember what his language was in that respect. He says he went to him because he was selectman in part, and because he was a man that knew his sheep, was familiar with them, was a judge of that class of sheep which he owned, and he wanted him to appraise them. Now, when he went to Hammond, had he then made up his mind, or did he then make up his mind and elect to proceed against the town ? He says that he hadn't ; and, if I remember right he says that he indicated to Hammond that he didn't then elect to proceed against the town. Mr. Hammond says that he is strongly of the impression, is very clearly of the impression, and I think the term he used in one instance was that the plaintiff didn't then so elect and indicated to him that he didn't so elect."

*Henry Ballard* and *Thos. H. McLeod,* for the defendant.

The question in this case is, whether from all the evidence, the plaintiff had " signified his election by proceeding," under the Act of 1876, so as to cut off and deprive him of his right to the *other* remedy. The defendant claims that he did, and that the court should have so ruled. This was a question for the court upon the evidence upon this point, and should not have been submitted to the jury at all. In order to " proceed" under the Act of 1876, against the town, the party must " inform" the " chairman of the selectmen of the town." Said chairman must " proceed to the premises where the damage was done." If in his opinion, " the amount of said damage exceeds twenty dollars, he shall appoint two disinterested persons who shall appraise such damage." They shall " return a certificate of the same to the board of selectmen on or before the first day of December." The appraisers shall receive from the town treasurer pay for this service, &c. It appears from the evidence in this case that all this was done. The court should have charged as requested upon the subject of damages—that the plaintiff could only recover double of *one-half* of the *actual* damages. As it appeared that the damages were done by *two dogs*, and the defendant was the owner or keeper of only *one* of them.

*L. E. Knapp* and *J . W. Stewart*, for the plaintiff.

1.   The ruling of the court was correct, that if entitled to re-
cover at all, the plaintiff is entitled to recover of the defendant
the whole of the damages caused by both dogs acting conjointly.
Revised Laws, 4051.   *Rowe* v. *Bird*, 48 Vt. 578.

2.   The question of whether the plaintiff made his election of
remedy by proceeding against the town is one of fact for the jury,
and refusal to direct a verdict was not error.

3.   The  court  properly  instructed  the jury, that, in order
to  render  the  plaintiff's  act  an " election" within the mean-
ing of the law, " he should understandingly and intentionally
have adopted the remedy which the law gives him against the
town as that he intended to pursue."   It must have been an " in-
tentional"  proceeding, otherwise it was no proceeding of his.   It
must have been " understandingly" in the sense of understanding
that it was a proceeding under the law, for his remedy against the
town, otherwise it was no election to pursue his remedy against
the town.

4.   The acts of the town officers had no power to determine
the plaintiff's remedy.

The opinion of the court was delivered by

REDFIELD, J.   This is an action, founded on the statute, to re-
cover damages for the killing and maiming of plaintiff's sheep, by
defendant's dog.

The defendant claimed that the plaintiff had *proceeded* against
the  town of Middlebury under the statute, by notifying the first
selectman of that town, of the damages he had suffered, and caus-
ing the damages to be appraised, as required by the statute.   The
evidence tended to show that plaintiff, in that proceeding did not
*elect* to proceed under the statute for his share of the "dog money"
in the town treasury ; and that Hammond, the selectman, told him
that he would have the damages appraised, and the plaintiff might
elect to proceed against the town, or against the owner and
keeper of the dog.   Under this state of the evidence, it would
have been error for the court to have directed a verdict for the
defendant.   And we think, the charge of the late Chief Justice on

this point, as was his custom, was very considerate and sensible; and the fact is concluded by the verdict.

II. The evidence disclosed the fact that another dog, not owned or kept by defendant, was in the company of defendant's dog when the damage was done; and as a legal inference, both were concerned in the mischief for which plaintiff seeks redress.

It is a familiar rule that each and all concerned are liable for acts of trespass, either to person or property; but it has been held at common law that different owners and keepers of dogs, concerned in such mischief, could not be jointly sued, but that each owner must answer for the wrongs of his own dog. *Russell* v. *Tomlinson & Hawkins*, 2 Conn. 206. The statute declares that all the owners or keepers of dogs, in such case, may be sued jointly. And we think it was the purpose and intent of the statute, that, when mischief of this kind has been done by a pack of dogs, each and all shall respond in damages to compensate the wrong. It is, of course, impossible to determine which dog has done the most mischief; but all have been concerned in it, and each and all must answer in the reparation. *Rowe* v. *Bird*, 48 Vt. 578.

Judgment of County Court affirmed.